# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DOUGLAS LAYMAN,

        Plaintiff,

vs.                                                                    Civ. No. 04-778 MV/LFG

CITY OF ALBUQUERQUE, CITY OF
ALBUQUERQUE OFFICER SERGEANT
SAYLOR, and CITY OF ALBUQUERQUE
OFFICER D. CAMPBELL,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff Douglas Layman's Motion for Summary Judgment Against Defendant Saylor on Counts II & IV of Plaintiff's First Amended Complaint to Recover Damages Resulting from a Deprivation of Civil Rights, filed March 17, 2005 **[Doc. No. 17]**. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that Plaintiff's motion is well-taken and will be **GRANTED.**

## BACKGROUND

Just before 1:00 a.m. on or about May 10, 2003, Plaintiff Douglas Layman was driving his truck in Albuquerque, New Mexico. Defendant Sergeant Clifford Saylor stopped Layman's truck by engaging his emergency equipment. The stop was recorded on Sergeant Saylor's belt tape. Both Layman and Sergeant Saylor submitted transcriptions of the belt tape.[1]

---

[1] There are some differences between the two transcriptions. Unless otherwise noted, the Court is including herein only those quotes for which the transcription is identical and thus

1

Sergeant Saylor asked for Layman's driver's license, registration and insurance.  Sergeant Saylor advised Layman that he suspected that Layman was racing another vehicle.  Layman said, "I don't know what you mean, racing, man."  Throughout the encounter, Layman continued to deny that he was racing.

Sergeant Saylor determined that Layman's proof of insurance card was not current and asked Layman if he had current insurance.  According to Layman's transcription of the belt tape, he responded, "I'm sure."  According to Sergeant Saylor's transcription of the belt tape, he responded, "I'm paying for it." In response to Sergeant Saylor's question, "Do you have one that shows me that?", Layman responded, "I don't know."

Sergeant Saylor issued Layman three citations for exhibition of speed, no insurance and windows or sunscreen material being excessive.  Thereafter, Layman said, "Hey, tell me, you have the Camaro there, too?"  Sergeant Saylor responded, "Is that what you were racing?"  Layman replied, "No. Was that what *you* were racing?" (emphasis added).  Sergeant Saylor then said, "If you want to keep going . . ."  At that point, Sergeant Saylor directed Layman, "Go ahead and turn the car off, and I'll call the tow truck back. Go ahead and turn it off."  After protestations from Layman, Sergeant Saylor ordered, "Sir, turn the car off and present me with the keys."  Sergeant Saylor took Layman's keys and ordered Layman to exit his truck and stand on the adjacent sidewalk.  In response to Layman's request that he be allowed to take his truck home and park it coupled with his promise that he would appear in court, Sergeant Saylor replied, "It's too late . . . Unfortunately, you're not insured.  You have nothing to prove that you're insured."  Layman countered, "Just because I forgot my insurance doesn't mean you have to tow it."  Sergeant Saylor responded, "Actually, it does.  By

undisputed.

2

City ordinance, I have to tow it."  Layman stated, "I showed you that I have insurance," to which Sergeant Saylor responded, "No, you showed me expired papers."  In response to Layman's request that Sergeant Saylor call his insurance company to verify that he was insured, Sergeant Saylor stated, "Are they open right now? No."

Sergeant Saylor asked Layman if he had been drinking at all that night and Layman replied, "No, sir . . . Not at all." Sergeant Saylor ordered Layman to perform a one-leg stand test, which Layman passed.  Sergeant Saylor then directed Layman to sit on the sidewalk while he took an inventory of the items in Layman's truck.  Sergeant Saylor gave Layman a copy of the tow report and informed Layman that he was free to leave.  Layman, however, replied that he wanted to stay and watch his truck be towed away.

Sergeant Saylor directed Layman to stay on the sidewalk while his truck was being towed. Sergeant Saylor said, "Sir, you've got to get out of the street, all the way out of the street onto the sidewalk . . . Onto . . . Mr. Layman, you are so close to going to jail."  Layman reluctantly followed Sergeant Saylor's directive, saying, "Sidewalk, sorry.  I'm on it. I'm on it.  I'm on it.  Is there a curfew on the sidewalk, too?"  During the ensuing discussion, Layman said "How was I racing a fucking Camaro? Is that stupidity on my part? Or your part? Answer me that."

Once his truck had been towed away, Sergeant Saylor asked Layman whether he wanted a ride home.  In response, Layman said, "Fuck you."  Sergeant Layman responded, "I'm sorry?" Layman then said, "What? Sorry? Is there something about being on the sidewalk?"  At that point, Sergeant Saylor ordered Layman, "Turn around.  Turn around.  Put your hands behind your back. . . . You're under arrest."  Layman then asked, "For what? . . . I'm allowed to argue.  I'm allowed to by law."  Thereafter, Officer D. Campbell, who had arrived on the scene sometime after Sergeant

Saylor issued Layman the citations, forced Layman to the ground.  Sergeant Saylor and Officer Campbell placed Layman in handcuffs.  During the arrest process, Layman's collarbone was broken. Sergeant Saylor and Officer Campbell subsequently transported  Layman to the hospital.  Officer Campbell filed a criminal complaint charging Layman with refusal to obey a lawful order and resisting arrest.

On June 23, 2004, Layman filed his First Amended Complaint to Recover Damages Resulting from a Deprivation of Civil Rights, Violation of the New Mexico Tort Claims Act, and Personal Injury.  On July 12, 2004, Defendants filed a Petition for Removal.  Thereafter, on March 17, 2005, Layman filed the instant motion.  Sergeant Saylor filed his response in opposition on May 23, 2005. Layman's reply followed on June 17, 2005.  On July 19, 2005, the Court entered an Order requesting clarification or, in the alternative, further briefing on the issue of qualified immunity.  In accordance with the Order, Sergeant Saylor filed an amended response on July 21, 2005 and Layman filed an amended reply on July 25, 2005.

## **STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Jones v. Kodak Medical Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999).  Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson*,

477 U.S. at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). There is no requirement that the moving party negate the nonmovant's claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."  *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citations omitted).  Rather than "merely show there is some metaphysical doubt as to the material facts," the nonmoving party is required to "go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial."  *Kaus v. Standard Ins. Co.*, 985 F. Supp 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998).  There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *See Anderson*, 477 U.S. at 248.  Upon a motion for summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence."  *Kaus*, 985 F. Supp at 1281.

## DISCUSSION

Layman seeks summary judgment on the second and fourth counts of the First Amended Complaint, which allege that Sergeant Saylor violated his Fourth Amendment and First Amendment rights, respectively.  As a threshold matter, the Court must determine whether Sergeant Saylor is entitled to qualified immunity on these claims.  If Sergeant Saylor is not entitled to qualified immunity, the Court next must determine whether, viewing the facts in the light most favorable to

5

Sergeant Saylor, there is no genuine issue of material fact and Layman is entitled to a judgment as a matter of law on the claims set forth in Counts II and IV of the First Amended Complaint.

## I.     <u>Qualified Immunity</u>

Under 42 U.S.C. §1983, "[e]very person" who acts under color of state law to deprive another of constitutional rights "shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." "Although this statute 'on its face admits of no immunities,' the Supreme Court has recognized several, including the doctrine of qualified immunity, which exempts government officials from suits for civil damages under certain circumstances." *Lawrence v. Reed*, 406 F.3d 1224, 1229 (10th Cir. 2005) (citation omitted). The doctrine of qualified immunity provides that "governmental officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Whether qualified immunity exists is a question of law. *See Guffey v. Wyatt*, 18 F.3d 869, 871 (10th Cir. 1994).

Once a defendant raises the issue of qualified immunity, "the burden shifts to the plaintiff to establish the defendant violated clearly established constitutional rights." *Guffey*, 18 F.3d at 871. "[The] court must first ascertain whether the plaintiff has sufficiently asserted the violation of a constitutional right at all." *Martinez v. Mafchir*, 35 F.3d 1486, 1490 (10th Cir. 1994) (citing *Siegert v. Gilley*, 500 U.S. 226, 231-33 (1991)). If the court determines that the plaintiff's allegations, if true, state a claim for a violation of a constitutional or statutory right, the court then must determine if this constitutional or statutory right was clearly established at the time of the alleged violation. *See Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir. 1995). This means that "[t]he contours of the right

must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "'Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'" *Albright v. Rodriquez*, 51 F.3d 1531, 1535 (10th Cir. 1995) (quoting *Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992)). If the plaintiff makes the requisite showing, the burden shifts to the defendant to "show 'no material issues of fact remain as to whether the defendant's actions were objectively reasonable in light of the law and the information the defendant possessed at the time of his actions.'" *Guffey*, 18 F.3d at 871 (citation omitted).

A. **Fourth Amendment Claim**

During the stop, Sergeant Saylor impounded Layman's truck, advising Layman that, under a city ordinance, he "had to tow it," because Layman did not have current proof of insurance. In Count II of the First Amended Complaint, Layman alleges that, by impounding his truck, Sergeant Saylor violated Layman's Fourth Amendment right to be free of unreasonable searches and seizures. Specifically, Layman argues that the seizure was effected without a warrant, without probable cause and without following the relevant city ordinance.

"The Fourth Amendment, made applicable to the States by the Fourteenth, provides in pertinent part that the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated .'" *Soldal v. Cook County*, 506 U.S. 56, 61 (1992). In *Soldal*, the Supreme Court reaffirmed that "seizures of property are subject to Fourth Amendment scrutiny." *Marcus v. McCollum*, 394 F.3d 813, 823 (10th Cir. 2004). Specifically, the Court held that "[a] 'seizure' of property . . . occurs when 'there is some meaningful

interference with an individual's possessory interests in that property.'" *Soldal*, 506 U.S. at 61 (citing *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).

The Tenth Circuit has held that the impoundment of a vehicle by law enforcement must comport with Fourth Amendment standards of reasonableness. *See United States v. Andas-Gallardo*, 3 Fed. Appx. 959, 962-63 (10th Cir. 2001); *United States v. Haro-Salcedo*, 107 F.3d 769, 770-72 (10th Cir. 1997). In *United States v. Ibarra*, 955 F.2d 1405 (10th Cir. 1992), the Tenth Circuit set forth the framework for the Fourth Amendment analysis of an impoundment, "identif[ying] two sources of authority for the warrantless removal of stopped, parked, or abandoned vehicles: specific state (or local) motor vehicle laws, and the general interest in public safety recognized in *South Dakota v. Opperman*, 429 U.S. 364 (1976)." *Williamson v. Bernalillo County Sheriff's Dep't*, 125 F.3d 864, 1997 WL 575812, **2 (10th Cir. Sept. 17, 1997) (unpublished opinion) (citing *Ibarra*, 955 F.2d at 1408-10).

Thus, it is clearly established that the Fourth Amendment protects individuals from the unreasonable seizure of their property. It is also clearly established that the impoundment of a vehicle constitutes an unreasonable seizure unless it is authorized by state or local law or the general interest in public safety. In the instant case, Layman has alleged that Sergeant Saylor deprived him of these clearly established rights by seizing and towing his truck without a warrant, without probable cause, and without following the relevant city ordinance. Accordingly, Layman has identified clearly established constitutional rights and has alleged conduct on the part of Sergeant Saylor which would be clearly prohibited. *See Ulmer v. City of Overland Park, Kansas*, 784 F. Supp. 807, 813 (D. Kan. 1992).

Sergeant Saylor argues that his conduct was objectively reasonable under the circumstances.

It is undisputed that the source of authority for his seizure of Layman's truck must be found in

Albuquerque City Ordinance §8-5-2-4 (the "Ordinance").[2]   That provision, which sets forth

circumstances permitting summary vehicle impoundment or relocation, includes the following:

> (A) Any municipal officer . . . may order the impoundment of any vehicle within the municipal corporate limits, without prior notice to the owner or operator thereof, under the following circumstances:
>
> ***
>
> (15) When a vehicle is being driven unsafely under state law due to one of the following:
>
> > (a)    Failure to have insurance on the vehicle as required under state law and as documented by one of the following:
> >
> > > 1.    An admission by the driver or other occupant of the vehicle;
> > >
> > > 2.    Confirmation through the New Mexico Department of Motor Vehicle records showing a prior citation for failure to have insurance within the past six months;
> > >
> > > 3.    Confirmation by the citing officer that the insurance company that the driver claims covers the vehicle does not in fact cover it.

The plain language of the Ordinance requires that, in order to impound a vehicle for failure

to have insurance, the failure to have insurance must be documented in one of three ways: admission

by the driver or occupant; state motor vehicle records showing a prior citation for failure to have

insurance; or advisement by the relevant insurance carrier that the vehicle is not insured.  It is

undisputed that Layman's failure to have insurance was not documented by any of these three means,

or by any means at all.  The undisputed evidence shows that Layman advised Sergeant Saylor that

he had current insurance, either by stating that he was "sure" he had it or that he was "paying for it."

Sergeant Saylor nonetheless advised Layman that the very fact that he "forgot his insurance" and

"showed him expired papers" meant that Sergeant Saylor was authorized under the Ordinance to tow

---

[2]  Sergeant Saylor does not argue or present evidence that he had concerns about public safety or that his decision to tow Layman's truck was based on anything other than his interpretation of the Ordinance.

his truck.  Moreover, Sergeant Saylor refused Layman's request that he contact his insurance carrier to verify that his vehicle was insured.

In his deposition testimony, Sergeant Saylor admitted that he did not seize Layman's truck in accordance with the Ordinance.  Specifically, Sergeant Saylor testified that he did not follow any of the three methods set forth in the Ordinance for documenting failure of insurance.  Nonetheless, Sergeant Saylor argues that it was objectively reasonable for him to seize Layman's truck based solely on the fact that Layman did not have proof of current and valid insurance.  In support of this argument, Sergeant Saylor states that he was not aware of the "specifics" of the Ordinance and was under the impression, based on a briefing given by a supervisor, that he could legally tow a vehicle if the driver did not have insurance.  Further, Sergeant Saylor states that the Ordinance reasonably can be construed to allow the seizure of a vehicle on the fact alone that the driver does not have in his possession proof of current and valid insurance.

Sergeant Saylor's argument is untenable.  First, the Supreme Court has admonished that "a reasonably competent public official should know the law governing his conduct."  *Harlow*, 457 U.S. at 819.  Moreover, Tenth Circuit law is clear that "failure to understand the law by the very person charged with enforcing it is *not* objectively reasonable."  *United States v. Tibbetts*, 396 F.3d 1132, 1138 (10th Cir. 2005) (emphasis in original).  In *Tibbetts*, the Tenth Circuit cited a Fifth Circuit mistake of law case which explained:

> "The rule articulated by the Supreme Court in *Whren* provides law enforcement officers broad leeway to conduct searches and seizures regardless of whether their subjective intent corresponds to the legal justifications for their actions.  But the flip side of that leeway is that the legal justification must be objectively grounded."

*Id.* at 1138 (citing *United States v. Miller*, 146 F.3d 274, 279 (5th Cir. 1998) (citing *Whren v. United*

*States*, 517 U.S. 806)).  Accordingly, while the Fourth Amendment will not invalidate a seizure based on a reasonable mistake of fact, the same is not true of a mistake of law.  *See United States v. DeGasso*, 369 F.3d 1139, 1144 (10th Cir. 2004).

For example, in *DeGasso*, the officer stopped the defendant for a violation of a provision of the Oklahoma statute regarding the use of fog lamps.  The only restriction that the provision placed on the use of fog lamps was that such lamps could not be used in substitution of head lamps, except under conditions of rain or fog.  Another provision of the Oklahoma statute required the use of headlamps from thirty minutes after sunset to thirty minutes before sunrise.  The defendant's stop occurred during daylight hours when visibility was clear.  The Tenth Circuit stated, "[b]ecause Oklahoma law did not require the use of headlamps at the time of the stop, we fail to see how the truck's fog lamps were 'used in substitution of headlamps.'" *Id.* at 1144.  The Tenth Circuit also stated that the district court had "misse[d] the mark" in concluding that the officer "reasonably believed" that the defendant violated the Oklahoma fog lamp statute or had a "reasonable belief" that the statutory provision authorized the stop. *Id.* Rather, the Tenth Circuit explained, "the dispositive inquiry [was] whether Oklahoma traffic law regarding the use of fog lamps provided Trooper Cason with an *objectively justifiable basis* for stopping Defendants." *Id.* at 1145 (emphasis in original). The Tenth Circuit concluded that "[t]he short answer to that question is no." *Id.*

Accordingly, "the dispositive inquiry" here is whether the Ordinance provided Sergeant Saylor "with an objectively justifiable basis" for seizing Layman's truck. *Id.*  As set forth above, the plain and unambiguous language of the Ordinance provides that a vehicle may be seized for failure of insurance only where the failure of insurance is documented by one of three means.  The Ordinance thus did not provide Sergeant Saylor with an objectively justifiable basis for seizing Layman's truck

in the absence of any documentation of failure of insurance.  Moreover, Sergeant Saylor's argument that he was not aware of the "specifics" of the Ordinance is essentially an argument that he is not responsible for knowing the law.  In support of this argument, Sergeant Saylor points only to the briefing he received by a supervisor that left him with "the impression" that he could legally tow a vehicle if the driver did not have insurance.  Sergeant Saylor points to nothing in the briefing that would have prevented him from knowing the law.  *See Lawrence*, 406 F.3d at 1231-32 (holding that court erred by granting police officer immunity on basis of his consultation with city attorney because police officer is charged with knowing the law and nothing in consultation with attorney should have prevented him from knowing the law).  Indeed, if he had simply read the Ordinance, which he admits he had never done prior to the instant action, he would have known the law.  Sergeant Saylor's conduct thus was not objectively reasonable under the circumstances.  Accordingly, Sergeant Saylor is not entitled to qualified immunity on Layman's §1983 claim for an alleged violation of the Fourth Amendment.

### B.    First Amendment Claim

During the stop, once Layman's truck had been towed away, Sergeant Saylor asked Layman whether he wanted a ride home.  In response, Layman said, "Fuck you."  Sergeant Layman responded, "I'm sorry?"  Layman then said, "What? Sorry? Is there something about being on the sidewalk?"  At that point, Sergeant Saylor ordered Layman, "Turn around.  Turn around.  Put your hands behind your back. . . . You're under arrest."  In Count IV of the First Amended Complaint, Layman alleges that Sergeant Saylor arrested Layman without probable cause and in retaliation for his use of expletives directed at Sergeant Saylor.  By doing so, Layman alleges, Sergeant Saylor violated his First Amendment right to freedom of speech.

The Supreme Court has held that "[f]reedom of speech and freedom of the press, which are protected by the First Amendment from infringement by Congress, are among the fundamental personal rights and liberties which are protected by the Fourteenth Amendment from invasion by state action." *Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 570 (1942).  Moreover, "the Supreme Court has repeatedly vitiated statutes providing the police with unfettered discretion to arrest individuals for words or conduct an officer finds offensive." *Guffey*, 18 F.3d at 871.  In *City of Houston, Tex. v. Hill*, 482 U.S. 451 (1987), the Supreme Court noted, "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers. . . . The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Id.* at 461-63.  The Tenth Circuit has held that, while an individual's words may "irk" a law enforcement officer, that officer "'may not exercise the awesome power at [his] disposal to punish individuals for conduct that is not merely lawful, but protected by the First Amendment.'" *Guffey*, 18 F.3d at 872 (citing *Duran v. City of Douglas, Ariz.*, 904 F.2d 1372, 1378 (9th. Cir 1990)).  In *Guffey*, the Tenth Circuit held that "the law is clear" that an officer acts without probable cause to make an arrest when that arrest is effected merely because of an individual's speech.  *Id.* at 873.

The Supreme Court also consistently has held that critical, challenging or profane speech directed at police officers is protected unless the speech is "shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." *Hill*, 482 U.S. at 461.  Thus, to characterize speech as actionable "fighting words," the government must prove that there existed "a likelihood that the person addressed would make an immediate violent response." *Gooding v. Wilson,* 405 U.S. 518, 528 (1972).  The "fighting words"

13

exception requires a narrower application in cases involving words addressed to a police officer, "because 'a properly trained officer may reasonably be expected to exercise a higher degree of restraint than the average citizen, and thus be less likely to respond belligerently to "fighting words."'" *Hill*, 482 U.S. at 462 (citation omitted).

Finally, the Supreme Court had held that "absent a more particularized and compelling reason for its actions, [a] State may not, consistent with the First and Fourteenth Amendments, make the simple public display . . . of [a] four-letter expletive a criminal offense." *Cohen v. California*, 403 U.S. 15, 26 (1971) (holding that the words "fuck you" are entitled to First Amendment protection). Under *Cohen*, the expletive "fuck you" does not rise to the level of "fighting words" but rather falls within the category of protected speech. *See Sandul v. Larion*, 119 F.3d 1250, 1254-56 (6th Cir.) (holding that Supreme Court precedent "should leave little doubt in the mind of a reasonable officer that the mere words and gesture 'f--k you' are constitutionally protected speech."), *cert. dismissed*, 522 U.S. 979 (1997).

Thus, it is clearly established that the First Amendment protects speech, including speech that is critical, challenging or profane, directed to police officers, unless that speech fits into a narrowly defined category of "fighting words." It is also clearly established that the use of the words "fuck you" does not rise to the level of "fighting words." Finally, it is clearly established that an arrest is without probable cause if it is based on an individual's use of protected speech. In the instant case, Layman has alleged that Sergeant Saylor deprived him of these clearly established rights by arresting him in retaliation for his use of expletives directed at Sergeant Saylor. Accordingly, Layman has identified clearly established constitutional rights and has alleged conduct on the part of Sergeant Saylor which would be clearly prohibited. Because Sergeant Saylor has not come forward with any

argument or evidence as to why his actions nonetheless were objectively reasonable in light of the law and the information he possessed at the time of his actions,[3] he is not entitled to qualified immunity on Layman's §1983 claim for an alleged violation of the First Amendment.

## II.    <u>Wrongful Seizure of Property in Violation of Fourth Amendment</u>

As set forth above, in Count II of the First Amended Complaint, Layman alleges that, by impounding his truck, Sergeant Saylor violated Layman's Fourth Amendment right to be free of unreasonable searches and seizures.  Also as set forth above, the Fourth Amendment applies to seizures of property in general and to the impoundment of vehicles in particular.  *See Soldal*, 506 U.S. at 61; *Haro-Salcedo*, 107 F.3d at 770-72.  Under *Ibarra*, the impoundment of a vehicle constitutes an unreasonable seizure in violation of the Fourth Amendment unless it is authorized by state or local law or the general interest in public safety.  *See Ibarra*, 955 F.2d at 1410.

It is undisputed that the source of authority for Sergeant Saylor's seizure of Layman's truck must be found in the Ordinance.[4]   As set forth above, the Ordinance, which sets forth the circumstances permitting summary vehicle impoundment or relocation, specifically requires that, in order to impound a vehicle for failure to have insurance, the failure to have insurance must be documented in one of three ways: admission by the driver or occupant; state motor vehicle records showing a prior citation for failure to have insurance; or advisement by the relevant insurance carrier

---

[3]  Sergeant Saylor failed to address the issue of qualified immunity in his original response to Layman's motion. The Court entered an Order providing Sergeant Saylor with an opportunity to submit additional briefing on this issue.  Although Sergeant Saylor did submit an amended response, his amended response did not address the issue of qualified immunity on Layman's First Amendment claim.

[4]  Sergeant Saylor does not claim that he had concerns about public safety or that his decision to tow Layman's truck was based on anything other than the Ordinance.

that the vehicle is not insured.  It is undisputed that Layman's failure to have insurance was not documented by any of these three means, or by any means at all.  The undisputed evidence shows that Layman advised Sergeant Saylor that he had current insurance, either by stating that he was "sure" he had it or that he was "paying for it." Sergeant Saylor nonetheless advised Layman that the very fact that he "forgot his insurance" and "showed him expired papers" meant that Sergeant Saylor was authorized under the Ordinance to tow his truck.  Moreover, Sergeant Saylor refused Layman's request that he contact his insurance carrier to verify that his vehicle was insured.  In his deposition testimony, Sergeant Saylor admitted that he did not seize Layman's truck in accordance with the Ordinance.  Specifically, Sergeant Saylor testified that he did not follow any of the three methods set forth in the Ordinance for documenting failure of insurance.

Layman argues that this undisputed evidence establishes that Sergeant Saylor violated his Fourth Amendment rights.  Accordingly, Layman requests a judgment as a matter of law on his §1983 claim based on this Fourth Amendment violation.  Sergeant Saylor opposes Layman's request, arguing that a genuine issue of material fact remains as to whether it was objectively reasonable for him to seize Layman's truck based solely on the fact that Layman did not have proof of current and valid insurance.  In support of this argument, Sergeant Saylor states that he was not aware of the "specifics" of the Ordinance and was under the impression, based on a briefing given by a supervisor, that he could legally tow a vehicle if the driver did not have insurance.  Further, Sergeant Saylor states that the Ordinance reasonably can be construed to allow the seizure of a vehicle on the fact alone that the driver does not have in his possession proof of current and valid insurance.

As set forth above, the relevant precedent leads to the inescapable conclusion that, as a matter of law, Sergeant Saylor's conduct was not objectively reasonable. *See Harlow*, 457 U.S. at 819 ("[A]

16

reasonably competent public official should know the law governing his conduct."); *Tibbets*, 396 F.3d at 1138 ("[F]ailure to understand the law by the very person charged with enforcing it is *not* objectively reasonable."); *DeGasso*, 369 F.3d at 1144 (holding that, while the Fourth Amendment will not invalidate a seizure based on a reasonable mistake of fact, the same is not true of a mistake of law). Under *DeGasso*, "the dispositive inquiry" is whether the Ordinance provided Sergeant Saylor "with an objectively justifiable basis" for seizing Layman's truck. *Id*. at 1145.

As discussed above, the plain and unambiguous language of the Ordinance provides that a vehicle may be seized for failure of insurance only where the failure of insurance is documented by one of three means. The Ordinance thus did not provide Sergeant Saylor with an objectively justifiable basis for seizing Layman's truck in the absence of any documentation of failure of insurance. Moreover, Sergeant Saylor's argument that he was not aware of the "specifics" of the Ordinance is essentially an argument that he is not responsible for knowing the law. In support of this argument, Sergeant Saylor points only to the briefing he received by a supervisor that left him with "the impression" that he could legally tow a vehicle if the driver did not have insurance. Sergeant Saylor points to nothing in the briefing that would have prevented him from knowing the law. *See Lawrence*, 406 F.3d at 1231-32 (holding that court erred by granting police officer immunity on basis of his consultation with city attorney because police officer is charged with knowing the law and nothing in consultation with attorney should have prevented him from knowing the law). Indeed, if he had simply read the Ordinance, which he admits he had never done prior to the instant action, he would have known the law. Accordingly, as a matter of law, Sergeant Saylor's conduct was not objectively reasonable under the circumstances. Layman thus is entitled to summary judgment in his favor on Count II of the First Amended Complaint.

**III.**     <u>**Retaliatory Arrest in Violation of First Amendment**</u>

As set forth above, in Count IV of the First Amended Complaint, Layman alleges that Sergeant Saylor violated his First Amendment right to free speech by arresting Layman in retaliation for his use of expletives directed at Sergeant Saylor. Also as set forth above, the First Amendment protects all speech other than a narrowly defined category of fighting words. *See Chaplinsky*, 315 U.S. at 570. Supreme Court precedent makes clear that expletives, particularly when directed at a police officer, constitute constitutionally protected speech rather than fighting words. *See Hill*, 482 U.S. at 461-63; *Cohen*, 403 U.S. at 26; *Guffey*, 18 F.3d at 872-73. At his deposition, Sergeant Saylor testified that he understood that it is within a citizen's First Amendment right to say "fuck you" to a police officer. Under *Guffey*, it is illegal for an officer to arrest someone based on speech that is protected by the First Amendment. *See id.*

The undisputed evidence shows that, once Layman's truck had been towed away, Sergeant Saylor asked Layman whether he wanted a ride home. In response, Layman said, "Fuck you." Sergeant Layman responded, "I'm sorry?" Layman then said, "What? Sorry? Is there something about being on the sidewalk?" At that point, Sergeant Saylor ordered Layman, "Turn around. Turn around. Put your hands behind your back. . . . You're under arrest."

At his deposition, Sergeant Saylor testified that, when he was cross-examined during the criminal trial arising from the stop at issue here, he responded, "No," to the question: "If [Layman] had not said F-U to you, would you have arrested him?" In addition, Sergeant Saylor testified that it is "fair" to say that, if Layman had not said "F-U" to him, he would never have been arrested. Sergeant Saylor further testified that Layman's "saying F-U . . . changed [his] discretion from letting it go and possibly doing whatever else to making an arrest." Finally, when he was asked, "I mean so

18

the F-U, it changed the whole – it changed your decision as to whether to arrest or not?", Layman responded, "Yes."

Layman argues that this undisputed evidence establishes that Sergeant Saylor violated his First Amendment rights. Accordingly, Layman requests a judgment as a matter of law on his §1983 claim based on this First Amendment violation. Sergeant Saylor opposes Layman's request, arguing that a genuine issue of material fact remains as to the reason for Layman's arrest. In support of this argument, Sergeant Saylor states that, during the entire course of the encounter, Layman exhibited uncooperative, recalcitrant behavior, repeatedly refusing to obey lawful orders. According to Sergeant Saylor, the fact that Layman told him, "Fuck you," "was not the *only* reason he arrested [Layman]." (emphasis in original). Rather, Sergeant Saylor contends, it was Layman's behavior during the entirety of the stop, which culminated in the "fuck you," that provided the probable cause for his arrest.

Sergeant Saylor thus admits that he used Layman's use of the words, "fuck you" as one reason for the arrest. Under clearly established precedent, such use of protected speech is an improper basis for an arrest. This is true regardless of whether the arrest otherwise would have been proper. *See Poole v. Otero*, 271 F.3d 955, 961 (10th Cir. 2001) ("[T]his court has stated that '[a]n act taken in retaliation for the exercise of a constitutionally protected right is actionable under §1983 even if the act, when taken for a different reason, would have been proper.'") (citation omitted). Moreover, while claiming that he arrested Layman based on the totality of his behavior during the stop, Sergeant Saylor's own testimony demonstrates that his decision to arrest Layman in fact turned on Layman's use of protected speech. Sergeant Saylor unequivocally admitted that it was the "fuck you" that changed his mind from letting Layman go and doing "whatever else" to making an arrest.

19

In addition, Sergeant Saylor admitted at least twice during his deposition that, but for Layman's use of the words, "fuck you," he would not have arrested him.    Thus, the undisputed evidence leaves no room for factual dispute regarding the reason for Layman's arrest.  Accordingly, as a matter of law, Sergeant Saylor's conduct violated Layman's First Amendment right to free speech.  Layman thus is entitled to summary judgment in his favor on Count IV of the First Amended Complaint.

## CONCLUSION

Sergeant Saylor is not entitled to qualified immunity on Layman's §1983 claims set forth in Counts II and IV of the First Amended Complaint.  The undisputed evidence demonstrates that Sergeant Saylor's impoundment of Layman's truck without following the Ordinance violated Layman's Fourth Amendment rights.   In addition, the undisputed evidence demonstrates that Sergeant Saylor's arrest of Layman in response to his use of expletives directed at Sergeant Saylor violated Layman's First Amendment rights.  Accordingly, Layman is entitled to a judgment as a matter of law on his §1983 claims set forth in Counts II and IV of the First Amended Complaint.

**IT IS THEREFORE ORDERED** that Plaintiff Douglas Layman's Motion for Summary Judgment Against Defendant Saylor on Counts II & IV of Plaintiff's First Amended Complaint to Recover Damages Resulting from a Deprivation of Civil Rights, filed March 17, 2005 **[Doc. No. 17]** is **GRANTED**.

**DATED** this 28th day of July, 2005.

_____
MARTHA VÁZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE

<u>Attorneys for Plaintiff</u>:
Joseph Kennedy
Shannon Oliver

<u>Attorney for Defendant</u>
Peter Auh